1  Bryan K. Theis, Esq., State Bar No. 209068
2  Theis Law Group
   533 Second Street Suite 400
3  Encinitas, California 92024
   Telephone: (213) 261-4240
4  Facsimile: (213) 995-9830
5  Email: bryan@theislaw.com

6  Blake J. Dugger, Esq. (PHV application pending)
7  Law Offices of Stefan Coleman, PLLC
   1011 W. Colter St., #236
8  Phoenix, Arizona 85013
   Telephone: (602) 441-3704
9  Facsimile: (888) 498-8946
10 Email: blake@stefancoleman.com

11
          **IN THE UNITED STATES DISTRICT COURT**
12        **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**
13

14 **LUCAS AMBREZEWICZ ,**              CASE NO.   '17CV2234 L   JMA
   **EDWARD TIMMONS, and MARK**
15 **HAIGLER,** individually and on behalf
   of all others similarly situated,
16
                                        **CLASS ACTION**
17        *Plaintiffs*,                 **COMPLAINT**

18 *v.*
19                                      **JURY TRIAL DEMANDED**
20 **GDFRIEND, INC.,** a California
   corporation, **dba Direct Home Energy**
21 **Solutions dba Green Home**
   **Investment Program dba Powerstar**
22 **Home Energy Solutions,**
23
          *Defendant.*
24
25

26 *///*
27
28

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Lucas Ambrezewicz ("Plaintiff Ambrezewicz" or "Ambrezewicz"), Plaintiff Edward Timmons ("Plaintiff Timmons" or "Timmons") and Plaintiff Mark Haigler ("Plaintiff Haigler" or "Haigler") bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant GDFriend, Inc. dba Direct Home Energy Solutions dba Green Home Investment Program dba PowerStar Home Energy Solutions ("Defendant" or "GDFriend") to stop Defendant's practice of making unsolicited autodialed telephone calls to the cellular telephones of consumers nationwide and to obtain redress, including injunctive relief, for all persons injured by its conduct - including those on the federal Do Not Call Registry. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1. Defendant GDFriend provides consumers with energy efficient home improvement products. Such products include doors and windows, vinyl siding, air conditioning units and bathtubs.

2. Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote its business and services in the energy-efficiency and home-improvement industry, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the making of repeated

unsolicited autodialed telephone calls to consumers' cellular telephones, including those that appear on the National Do Not Call Registry, without consent -- all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

3.      By making the autodialed telephone calls at issue in this Complaint, Defendant caused Plaintiffs and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation, annoyance, and nuisance and invasions of privacy that result from the receipt of such calls in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiffs' and the other Class members' use and enjoyment of their cellular telephones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular data and minutes.

4.      The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiffs file the instant lawsuit and seek an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

5.     Plaintiff Ambrezewicz is a natural person and a citizen of the State of California, residing in the City of Colton.

6.     Plaintiff Timmons is a natural person and a citizen of the State of California, residing in the City of Yucaipa.

7.     Plaintiff Haigler is a natural person and a citizen of the State of California, residing in the City of San Diego.

8.     Defendant GDFriend is a corporation organized and existing under the laws of the State of California with headquarters located at 14252 Culver Dr., Ste. A213, Irvine, CA 92604.[1]

## JURISDICTION AND VENUE

9.     This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, which is a federal statute.

10.     The Court has personal jurisdiction over Defendant because it solicits significant business in this District, has entered into business to business contracts in this District, the calls at issue were directed to and received in this District, and the unlawful conduct alleged in this Complaint occurred in and/or was directed to this District.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and the causes of action arose, in

---

[1] California corporate number C2565500.

substantial part, in this District. Venue is additionally proper as Plaintiff Haigler resides in this District.

## COMMON FACTUAL ALLEGATIONS

12.  As discussed *supra,* Defendant provides consumers with energy-efficient home improvement products.

13.  As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

14.  Yet in violation of this rule, Defendant fails to obtain any prior express written consent to make these autodialed calls to cellular telephone numbers.

15.  Consumer complaints about Defendant's invasive and repetitive calls are legion. As a sample, consumers have complained as follows:

- Called my DNC home line.  No message. Blocked the number.[2]

- Called tried to sell energy upgrades.  Told him not interested please take me of call list.  Stated he did not have list I should change my number.  Told him what he could do and I hung up.  He called back used a swear word at me and hung up![3]

- Same thing happened to me! After I told him to take us off the list he said he didn't have a list and I said thanks stop calling bye and he

---

[2] http://800notes.com/Phone.aspx/1-949-728-5353.

[3] *Id.*

called back and said he will call who he damn well pleases. Wow![4]

- Interesting addition I have been getting so many calls from this number that I decided to even entertain what ever they were trying to sell. First they keep asking for Jerome.  My name is Mike.  I said yes this is him I am interested and guy just hung up lol.  So they don't even want to sell anything.  What is the angle here??[5]

- NO TALK, TWICE IN ABOUT A MINUTE THEY CALLED[6]

- Both my home and my mobile phone are on the DNC list, but I continue to get repeated telemarketing calls from this business.  They claim they were asked to call me by the Green Home Investment Program … I asked what the company was.  He said Direct Home Energy Solutions and that they were being asked to call people b the Green Home Investment Program …[7]

- Called my cell, and I don't answer if I don't recognize the number.[8]

16.    In placing the calls that form the basis of this Complaint, Defendant utilized an automatic telephone dialing system ("ATDS") in violation of the TCPA. Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting

---

[4] *Id.*

[5] *Id.*

[6] http://whocallsme.com/Phone-Number.aspx/9497285353.

[7] https://www.yelp.com/biz/direct-home-energy-solutions-santa-ana

[8] http://800notes.com/Phone.aspx/1-949-728-5353.

answered calls to then available callers and disconnecting the rest (all without human intervention).

17.    Furthermore, Defendant calls customers who have no "established business relationship" with Defendant and who are registered on the Do Not Call Registry.

18.    When placing these calls to consumers, Defendant failed to obtain prior express written consent as required by the TCPA from cellular telephone owners/users to make such calls.

19.    Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendant continues to call them.

20.    Defendant knowingly made (and continues to make) telemarketing calls without the prior express written consent of the call recipients and knowingly continues to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiffs and other members of the putative Classes but also intentionally and repeatedly violated the TCPA.

21.    To hide its true identity when placing unwanted autodialed solicitation calls, Defendant uses a variety of trade names in connection with a variety of websites.  For example, Defendant uses the trade names 1.) Direct Home Energy Solutions; 2.) Green Home Investment Program; and 3) Powerstar Home Energy Solutions--and Defendant owns and/or operates their websites.  As shown below, each of these trade names are connected to Defendant via nearly identical websites

and each website is registered in Defendant's name.  Furthermore, each of these

websites and/or trade names were given to the at least one of the plaintiffs in this

action.

22.     Plaintiff Haigler received phone calls from an entity claiming to be

Direct Home Energy Solutions.  This entity is associated with the website

http://directgogreen.com.  Defendant is the registrant of the website

http://directgogreen.com.

```
The Registry database contains ONLY .COM, .NET, .EDU domains and
Registrars.
Domain Name: DIRECTGOGREEN.COM
Registrar URL: http://www.godaddy.com
Registrant Name:
Registrant Organization: GDFriend, Inc.
Name Server: NS07.DOMAINCONTROL.COM
Name Server: NS08.DOMAINCONTROL.COM
DNSSEC: unsigned
```
9

23.     Below is a screenshot of www.directgogreen.com.



---

9 http://domaintz.com/tools/whois/directgogreen.com

CLASS ACTION COMPLAINT

24.     Defendant also uses the name Everlast Home Energy Solutions whose website everlastgogreen.com is nearly identical to Direct Home Energy Solutions' website directgogreen.com.  Both websites are registered to Defendant.



25.     Defendant's representative informed Plaintiff Timmons that its website was powerstargogreen.com.  Defendant is also the registrant for the similarly looking website http://powerstargogreen.com.

```
The Registry database contains ONLY .COM, .NET, .EDU domains and
Registrars.
Domain Name: POWERSTARGOGREEN.COM
Registrar URL: http://www.godaddy.com
Registrant Name: Ethan Sundilson
Registrant Organization: GDFriend, Inc.
Name Server: NS07.DOMAINCONTROL.COM
Name Server: NS08.DOMAINCONTROL.COM
DNSSEC: unsigned
```

[10]

---

[10] http://domaintz.com/tools/whois/powerstargogreen.com

Below is a screenshot of www.powerstargogreen.com, which is nearly identical to directogogreen.com and everlastgogreen.com



26.     Defendant is also the registrant for www.ghip.org:[11] Defendant's representative informed Plaintiff Ambrezewicz that its website was ghip.org.

```
Registrant Name: Gregory Friend
Registrant Organization: Gregory Friend
Registrant Street: 14252 Culver Dr #A213
Registrant City: Irvine
Registrant State/Province: California
Registrant Postal Code: 92604
Registrant Country: US
Registrant Phone: +1.3235435884
Registrant Phone Ext:
Registrant Fax:
Registrant Fax Ext:
Registrant Email: ethans@everlastgogreen.com
Registry Admin ID: C188037320-LROR
```
[12]

Below is a screenshot of www.ghip.org.

_____

[11] Gregory Friend is associated with GDFriend, Inc.

[12] http://domaintz.com/tools/whois/ghip.org

27.     Together, these websites work in such a manner to feed leads to Defendant in order to secure business and ultimately increase its bottom line.

**FACTS SPECIFIC TO PLAINTIFF AMBREZEWICZ**

28.     On September 27, 2013, Plaintiff Ambrezewicz registered his cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls.

29.     On or about May 29, 2017 Plaintiff Ambrezewicz began receiving unsolicited autodialed calls on his cellular telephone from telephone number 714-205-9008.

30.     On June 8, 2017 Plaintiff Ambrezewicz received a call on his cellular phone from the 714-205-9008 number.  When Plaintiff Ambrezewicz answered this call he heard a pause at the beginning before an agent began to speak.  Such pause

is indicative of the use of an automated telephone dialing system.  The purpose of the call to Plaintiff Ambrezewicz was to solicit his business.  Plaintiff Ambrezewicz demanded that the person stop calling him and to add his number to its internal do not call list.

31.     Despite Plaintiff Ambrezewicz's request for the calls to stop, he received another autodialed call from the 714-205-9008 number on his cellular phone on June 9, 2017.  Plaintiff Ambrezewicz answered and again demanded that the person not call him again.  During this call, out of frustration and for the purpose of getting the calls to stop, Plaintiff Ambrezewicz asked for details regarding the person's company, and was told that the person was calling on behalf of the "Green Home Investment Project".  Plaintiff Ambrezewicz was also told by the caller that its website was ghip.org.

32.     Again, on July 7, 2017, he received another autodialed call on his cellular telephone from telephone number 909-318-0496.  As Plaintiff did with the previous two calls, he asked that the person not call him again.

33.     GDFriend is the owner and/or user of the 714-205-9008 number and the 909-318-0496 number.

34.     All of GDFriend's calls to Plaintiff are in violation of the Do Not Call Registry regulations because over 30 days had passed since Plaintiff Ambrezewicz registered his telephone number on the Do Not Call Registry.

35.     Despite Plaintiff Ambrezewicz's repeated requests for GDFriend to stop calling him, GDFriend continued to contact or attempt to contact him.

## FACTS SPECIFIC TO PLAINTIFF TIMMONS

36.     On June 1, 2016, Plaintiff Timmons registered his cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on his cellular phone.

37.     On or about June 20, 2017 Plaintiff Timmons began to receive unsolicited autodialed telephone calls on his cellular telephone from telephone number 909-699-9021.

38.     On June 27, 2017 Plaintiff Timmons received a call on his cellular phone from the 909-699-9021 number. This call was not answered.  Immediately after this call, Plaintiff Timmons called the 909-699-9021 number back to find out who was calling.  When someone answered, Plaintiff Timmons explained to the person that his phone number is registered with the National Do Not Call Registry; he doesn't own a home; and he specifically wanted the calls to stop.

39.     The purpose of the calls made to Plaintiff Timmons were to solicit his business.

40.     Despite this request for the calls to stop, on July 1, 2017 Plaintiff Timmons received another autodialed call on his cellular phone from the 909-699-9021 number.  Plaintiff Timmons answered this call and again asked that the person stop calling him.

41.     Despite Plaintiff Timmons' second request for the calls to stop, he received another autodialed call on his cellular phone on July 3, 2017 from the 909-699-9021 number.  Again, Plaintiff asked the person to stop calling him.

42.     Later in the day Plaintiff Timmons received yet another autodialed call on his cellular phone from the 909-699-9021 number. Plaintiff Timmons answered this call and again asked that the calls stop.

43.     Plaintiff Timmons received another autodialed call on his cellular phone from the 909-699-9021 number on July 5, 2017.  Plaintiff Timmons answered the call and asked whom the agent worked for.  Plaintiff Timmons was given the website powerstargogreen.com. As with the previous calls, Plaintiff Timmons again asked that the person stop calling him.  Powerstargogreen.com is registered to GDFriend.

44.     Plaintiff Timmons received two more calls from the 909-699-9021 number on July 15, 2017 and July 22, 2017.  These calls were not answered.

45.     All of GDFriend's calls to Plaintiff Timmons are in violation of the Do Not Call Registry regulations because over 30 days had passed since Plaintiff Timmons registered his telephone number on the Do Not Call Registry.

46.     Despite Plaintiff Timmons' repeated requests for GDFriend to stop calling him, GDFriend continued to contact or attempt to contact him.

**FACTS SPECIFIC TO PLAINTIFF HAIGLER**

47.     On July 2, 2003, Plaintiff Haigler registered his cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on his cellular telephone.

48.     On or about January of 2017, and more than 30 days after his number was registered on the National Do Not Call Registry, Plaintiff Haigler started to receive a series of harassing telemarketing calls from telephone number 949-728-5353.

49.     Each time Plaintiff Haigler answered a call from the 949-728-5353 number on his cellular telephone, he heard a pause before being connected to a live representatives.  Such pause is indicative of the use of an autodialer.

50.     After answering a call from the 949-728-5353 number, a representative came on the line and claimed to be calling on behalf of DirectHome Energy Solutions.

51.     Each time Plaintiff Haigler answered a call on his cellular telephone from the 5353 Number, the person on the other line asked for a "Jimmy."

52.     Each time Plaintiff Haigler answered a call from the 949-728-5353 number on his cellular telephone, he informed the caller that he is not associated with the "Jimmy" he or she is looking for.  Furthermore, each time Plaintiff Haigler answered a call from the 949-728-5353 number, he directly told the person on the end of the line to stop calling him.

53.     On at least one of the calls that Plaintiff Haigler answered from the 949-728-5353 number, the caller indicated that the purpose of the call was to solicit Plaintiff Haigler to utilize the caller's home-improvement services.

54.     On at least one occasion, out of frustration and for the sole purpose of getting the calls to stop, Plaintiff Haigler made an appointment for "Jimmy" to have the caller's company come to Plaintiff Haigler's house.

55.     Despite Plaintiff Haigler's request for the autodialed calls to his cellular telephone to stop, he continued to receive calls from the 949-728-5353 number for the purpose of soliciting his business.

56.     For example, Plaintiff Haigler received unwanted solicitation calls from the 949-728-5353 number on the following dates: 1.) January 4, 2017; 2.) January 5, 2017 at 10:01 a.m. and 12:02 p.m.; 3.) January 9, 2017; 4.) January 17, 2017; and January 23, 2017.

57.     All of GDFriend's calls to Plaintiff Haigler are in violation of the Do Not Call Registry regulations because over 30 days had passed since Plaintiff Haigler's number was registered on the Do Not Call Registry.

58.     Despite Plaintiff Haigler's repeated requests for GDFriend to stop calling him, GDFriend continued to contact or attempt to contact him.

59.     Plaintiff Haigler never consented in writing or otherwise to receive autodialed telephone calls on his cellular telephone from GDFriend.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

60.     Plaintiffs have never consented in writing or otherwise to receive autodialed telephone calls on his cellular telephone from GDFriend.

61.     Plaintiffs do not have a relationship with GDFriend, have never provided their telephone number to GDFriend, and have never requested that GDFriend place calls to them or offer them its services. Simply put, Plaintiffs have never provided any form of prior express written consent to GDFriend to place calls to them and have no business relationship with GDFriend.

62.     GDFriend at all times is and was aware that the above-described autodialed telephone calls were and are being made to consumers like the Plaintiffs who had not consented to receive them and whose telephone numbers have been registered with the National Do Not Call Registry.

63.     By making unauthorized autodialed calls to consumers' cellular telephones as alleged herein, GDFriend has caused consumers actual, concrete harm and annoyance. In the present case, a consumer could be subjected to many unsolicited autodialed telephone calls, as GDFriend's opt-out system does not work.

64.     In order to redress these injuries, Plaintiffs, on behalf of themselves and the Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed telephone calls to cellular telephones.

65.     On behalf of the Classes, Plaintiffs seek an injunction requiring GDFriend to cease all unauthorized autodialed telephone calling activities,

1
2
3
4

declaratory relief establishing that GDFriend's calls violated the TCPA, and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

5

## CLASS ALLEGATIONS

6
7
8
9

66.    Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and four Classes defined as follows:

10
11
12
13
14
15

**Autodialed No Consent Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant (or a third person acting on behalf of Defendant) called; (2) on the person's cellular telephone number; (3) for the purpose of marketing Defendant's products and services; and (4) for whom Defendant claims it obtained prior express written consent in the same manner as Defendant claims it obtained prior express written consent to call the Plaintiffs.

16
17
18
19
20

**Autodialed Stop Call Class**: All persons in the United States who from four years prior to the filing of the initial complaint in this action to the present: (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's cellular telephone number, (3) for the purpose of marketing Defendant's products and services, (4) after the person informed Defendant that s/he no longer wished to receive calls from Defendant.

21
22
23
24
25
26
27

**Do Not Call Registry Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellular telephone; (2) within any 12-month period (3) where the cellular telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of marketing Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiffs.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Stop Calling Do Not Call Class**: All individuals in the United States (1) who had his or her telephone number(s) registered with the National Do Not Call Registry for at least thirty days; (2) who received more than one telephone call made by or on behalf of Defendant within a 12-month period; and (3) who requested that Defendant not call them again (4) and received at least two additional calls from Defendant more than thirty (30) days after requesting for the calls to stop.

67.     The following people are excluded from the Classes: any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiffs anticipate the potential need to amend the Class Definitions following the completion of class discovery regarding the size and scope of the Classes and the manner by which Defendant claims it obtained prior express consent.

68.     **Numerosity**: The exact sizes of the Classes are unknown and not available to Plaintiffs at this time, but individual joinder is impracticable. On information and belief, Defendant made telephone calls to thousands of consumers

who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records and by reference to other objective criteria.

69. **Commonality**: There are several questions of law and fact common to the claims of Plaintiffs and the Classes on which every class member's claim will either succeed or fail, and which will be proven using common evidence. Such common questions for the Classes include, without limitation:

(a)     Whether Defendant's conduct violated the TCPA;

(b)     Whether Defendant systematically made telephone calls to individuals who did not provide Defendant and/or its agents with their prior express written consent to receive such phone calls;

(c)     Whether Defendant made the calls with the use of an ATDS;

(d)     Whether Defendant systematically made multiple telephone calls within the same 12-month period to consumers who telephone numbers were registered with the National Do Not Call Registry;

(e)     Whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct; and

(f)     Whether Defendant systematically made telephone calls to consumers after they explicitly asked not to be called by Defendant.

70. **Typicality**: Plaintiffs' claims are typical of the claims of the other members of the Classes. Plaintiffs are members of the Classes, and if Defendant violated the TCPA to call Plaintiffs then it violated the TCPA to call the other class

members. Plaintiffs and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiffs and the Classes.

71.   **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

72.   **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on facts or law applicable only to Plaintiffs.

73.   **Predominance:** The common questions of law and fact set forth above predominate over any individual issues. Whether Defendant properly obtained prior express consent to call and whether Defendant used an ATDS go to the very heart of the case and are facts on which all class members' claims hinge. As such, the common issues predominate over any supposed individualized issues.

74.     **Superiority and Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227 *et seq.***
**(On behalf of Plaintiffs and the Autodialed No Consent Class)**

75.     Defendant made unsolicited and unwanted autodialed telephone calls to telephone numbers belonging to Plaintiffs and the other members of the Autodialed No Consent Class—without their prior express written consent.

76.     Defendant's calls were made for the purpose of marketing Defendant's energy-efficient home improvement services.

77.     At no time did Defendant obtain prior express written consent that disclosed to the called party that the called party consented to be called with an automatic telephone dialing system or prerecorded voice or that providing such consent was not a condition (direct or indirect) of any purchase of any goods or services.

78.     Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiffs and other members of the Autodialed No Consent Class simultaneously and without human intervention.

79.     By making unsolicited telephone calls to Plaintiffs and members of the Autodialed No Consent Class's cellular telephones without prior express written consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

80.     As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Autodialed No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

81.     In the event that the Court determines that Defendant's conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Autodialed No Consent Class.

### SECOND CAUSE OF ACTION
**Violation of 47 U.S.C. § 227 *et seq*.**
**(On behalf of Plaintiffs and the Autodialed Stop Call Class)**

82.     Plaintiffs incorporate and re-allege paragraphs 1-74 as if fully set forth herein.

83.     Defendant made unsolicited and wanted telemarketing calls to telephone numbers belonging to Plaintiffs and the other members of the Autodialed Stop Call Class on their cellular telephone *after* the person had informed Defendant that he or she no longer wished to receive such calls from Defendant.

84.     Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

85.     By making unsolicited telephone calls to Plaintiffs and members of the Autodialed Stop Call Class's cellular telephones after they requested to no longer

1
2
receive calls, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii) by continuing to call them without prior express written consent.

3
4
5
6
7
8
9
86.     As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Autodialed Stop Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

10
11
12
13
14
87.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the Autodialed Stop Call Class.

15
16
17
**THIRD CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.**
**(On behalf of Plaintiffs and Do Not Call Registry Class)**

18
19
20
88.     Plaintiffs incorporate and re-allege paragraphs 1-74 as if fully set forth herein.

21
22
23
24
25
26
27
28
89.     The TCPA, specifically 47 U.S.C. § 227(c), provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

90.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c),

provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

residential telephone subscriber who has registered his or her telephone number on

the national do-not-call registry of persons who do not wish to receive telephone

solicitations that is maintained by the federal government."

91.    47 C.F.R. § 64.1200(e), in turn, provides that § 64.1200(c) and (d) "are

applicable to any person or entity making telephone solicitations or telemarketing

calls to wireless telephone numbers to the extent described in the Commission's

Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations

Implementing the Telephone Consumer Protection Act of 1991.'" (the "Report and

Order").

92.    And the Report and Order thereafter states as follows:

> The Commission's rules provide that companies making telephone
> solicitations to residential telephone subscribers must comply with
> time of day restrictions and must institute procedures for maintaining
> do-not-call lists. For the reasons described above, we conclude that
> these rules apply to calls made to wireless telephone numbers. We
> believe that wireless subscribers should be afforded the same
> protections as wireline subscribers.[13]

93.    47 C.F.R. § 64.1200(d) provides that "[n]o person or entity shall

initiate any call for telemarketing purposes to a residential telephone subscriber

unless such person or entity has instituted procedures for maintaining a list of

persons who request not to receive telemarketing calls made by or on behalf of that

---

[13] 68 Fed. Reg. 44143, 44166 (July 25, 2003).

person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls

for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

94.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, multiple telephone solicitations within a 12-month period to wireless telephone subscribers such as Plaintiffs and the Do Not Call Registry Class members, who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

95.     Defendant made more than one unsolicited telephone call to Plaintiffs and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiffs and members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

96.     Defendant also violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiffs and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for having a written policy, available on demand, for maintaining a list of persons who request not to receive

telemarketing calls from them, without training its employees or personnel in the use of any such internal do not call list, and in not recording and honoring do not call requests made by consumers.

97.   Defendant further violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

98.   As a result of Defendant's conduct as alleged herein, Plaintiffs and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the members of the Do Not Call Registry Class.

### FOURTH CAUSE OF ACTION
### Violation of 47 U.S.C. § 227 *et seq*.
### (On behalf of Plaintiffs and the Stop Calling Do Not Call Class)

99.   Plaintiffs incorporate and re-allege by reference paragraphs 1-74 as if fully set forth herein.

100.   Defendant violated 47 C.F.R. §64.1200 by initiating calls for telemarketing purposes to residential telephone subscribers such as Plaintiff and the Stop Calling Do Not Call Class who were registered on the National Do Not Call

Registry and who specifically told Defendant to stop calling them, and who received two more calls within a 12-month period from Defendant at least thirty (30) days after informing Defendant to stop calling them. Defendant made these calls without instituting procedures that comply with the minimum regulatory standards for maintaining a list of persons who request not to receive telemarketing calls from them or training its personnel in the existence and use of any such list.

101.   As a result of Defendant's unlawful conduct, Plaintiffs and the Stop Calling Do Not Call Class suffered actual damages and, under section 47 U.S.C. § 227(c), Plaintiff and each member of the Stop Calling Do Not Call Class is each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

102.   Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiffs and the other members of the No Consent Do Not Call Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Lucas Ambrecewicz, Plaintiff Edward Timmons, and Plaintiff Haigler, on behalf of themselves and on behalf of the Classes, pray for the following relief:

103.   An order certifying the Classes as defined above, appointing Plaintiffs Mark Haigler, Lucas Ambrecewicz and Edward Timmons as the representative's of the Classes and appointing their counsel as Class Counsel.

104.   A declaratory judgment declaring that Defendant's calls violated the TCPA, that Defendant's equipment constitutes an automatic telephone dialing system under the TCPA, that Defendant failed to obtain prior express written consent to call Plaintiff or any of the Class members, that Defendant failed to maintain an internal Do Not Call list and to train its personnel engaged in telemarketing in the existence and use of such a list, and that Defendant failed to honor stop-call requests to Plaintiffs and the members of the Autodialed Stop Call Class.

105.   An order requiring Defendant to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices.

106.   An award of actual and statutory damages, to be trebled in the event the Court finds that Defendant has acted knowingly and willfully, to be paid into a common fund for the benefit of the Class Members.

107.   An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, to honor do not call requests, to provide a domestic number for opting out, and otherwise protecting the interests of the Classes.

108.   An injunction prohibiting Defendant from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment.

109.   An injunction prohibiting Defendant from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA.

110.   An injunction prohibiting Defendant from conducting any future telemarketing activities until it has established an internal Do Not Call List as required by the TCPA and trained its employees in the existence and use of its internal Do Not Call list.

111.   An award of reasonable attorneys' fees and costs to be paid from the common fund; and such other and further relief that the Court deems reasonable and just.

### JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated: November 1, 2017

**LUCAS AMBREZEWICZ**, **EDWARD TIMMONS**, and **MARK HAIGLER**, individually and on behalf of all others similarly situated,

By: /s/ Bryan K. Theis_____
Bryan K. Theis, Esq., State Bar No. 209068
Theis Law Group
533 Second Street Suite 400
Encinitas, California 92024
Telephone: (213) 261-4240
Facsimile: (213) 995-9830
Email: bryan@theislaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Blake J. Dugger, Esq. (PHV app. pending)
Law Offices of Stefan Coleman, PLLC
1011 W. Colter St., #236
Phoenix, Arizona 85013
Telephone: (602) 441-3704
Facsimile: (888) 498-8946
Email: blake@stefancoleman.com

Attorneys for Plaintiffs and the Classes